Michael Hollowell, SBN 314530
Redding Rancheria
2000 Redding Rancheria Road
Redding, California 96001-5528
Michael.Hollowell@reddingrancheria-nsn.gov
Telephone: (530) 242-4557
Fax: (530) 243-8768

Scott Crowell *Pro Hac Vice pending*
Crowell Law Office – Tribal Advocacy Group PLLC
1487 W. State Route 89A, Ste. 8
Sedona, Arizona 86336
scottcrowell@clotag.net
Telephone: (425) 802-5369
Fax: (509) 235-5017

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REDDING RANCHERIA, a federally-recognized Indian Tribe,<br><br>Plaintiff,<br><br>vs<br><br>STATE OF CALIFORNIA, and GAVIN NEWSOM IN HIS OFFICIAL CAPACITY AS GOVERNOR OF CALIFORNIA. | Case No._____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff, the Redding Rancheria ("Redding" or "Tribe"), by and through its attorneys of record herein, complains and alleges as follows:

1

Complaint

## JURISDICTION

1.      Redding alleges that the State of California and its Governor, Gavin Newsom (collectively, "State") failed to conclude tribal/state compact negotiations in good faith under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701, *et seq.*, in response to Redding's request for a new Class III Gaming Compact or an amendment to Redding's current Class III Gaming Compact (the "Redding 1999 Compact"). Therefore, this Court has original jurisdiction over the subject matter of Redding's action pursuant to 28 U.S.C. §§ 1331 and 1362, in that Redding's claims arise under, *inter alia*, 25 U.S.C. § 2710(d)(7)(A) and § 9.1(d) of the Redding 1999 Compact. *See generally, Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997) (holding that a tribe's "claim to enforce the Compacts arises under federal law and thus that we have jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1362").

2.      Defendant State of California affirmatively has waived its sovereign immunity to this suit pursuant to Calif. Gov't. Code § 98005, as well as in § 9.1(d) of the Redding 1999 Compact, which was ratified by the California Legislature in California Government Code § 12012.25.

## VENUE

3.      Venue in this action lies in this District pursuant to 28 U.S.C. § 1391(b) because: (1) the State of California's seat of government is located within the Eastern

Complaint

District of California; (2) the State committed the alleged violation of the Redding 1999 Compact within the Eastern District of California; (3) the Redding 1999 Compact requires that a lawsuit filed by the Tribe be filed in this District;   and (4) pursuant to Calif. Code of Civ. Proc. § 401, the State of California can be sued in any County in which the Attorney General of California maintains an office,  and the Attorney General of California maintains offices in the Counties of Sacramento and Fresno, within the Eastern District of California.

## **PARTIES**

4.     Plaintiff Redding Rancheria is a sovereign, federally-recognized Indian Tribe that maintains government-to-government relations with the United States of America.

5.     Defendant is the State of California, a state of the United States of America.

6.     Defendant Gavin Newsom is the duly-elected Governor of the State of California, and is sued in his official capacity.

## **FACTUAL ALLEGATIONS**

7.     Redding is the beneficial owner of, and exercises governmental authority over, the Redding Rancheria and its Indian lands located in Shasta County, California, which Indian lands the federal government holds in trust for Redding. Redding's Indian lands are "Indian country" within the meaning of 18 U.S.C. § 1151, and the lands are "Indian lands" as defined in 25 U.S.C. § 2703(4).

Complaint

8.   In 1999, Redding and the State of California executed the Redding 1999 Compact pursuant to IGRA, which took effect on or about May 16, 2000. The Redding 1999 Compact's term expires on June 30, 2022.

9.   Redding owns the Win-River Resort & Casino on its Indian lands, and operates the Casino pursuant to the Redding 1999 Compact.

10.   IGRA categorizes gaming into three "Classes": social games for prizes of minimal value, and ceremonial games ("Class I"); bingo and games similar to bingo, including electronic, computer or other technologic aids to such games, and non-banking card games, to the extent such games either are expressly authorized or not expressly prohibited by state law ("Class II"); and all other forms of gaming, including slot machines ("Gaming Devices") and "banked games" (*e.g.*, blackjack, in which the "house" or "bank" takes on all comers, paying all winners and collecting from all losers) ("Class III").

11.   IGRA, 25 U.S.C. § 2710(d)(3)(A), provides that for an Indian tribe to conduct Class III gaming on its Indian lands, the tribe must request that the state enter into negotiations for a compact setting forth the terms and conditions under which the tribe may conduct Class III gaming activities. In response to a tribe's request to negotiate (or renegotiate) the terms of a compact, the state is obligated to negotiate in good faith about the tribe's request. *Id*.

Complaint

12.    IGRA does not specifically define the term "Gaming Activities," but the U.S. Supreme Court has defined it to mean: "what goes on in a casino — each roll of the dice and spin of the wheel." *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 783 (2014). Consistent with *Bay Mills*, in this Complaint the term "Gaming Activities" shall refer to the Class III gaming that is authorized in the Redding 1999 Compact and any future compact between the State and Redding.

13.    IGRA, 25 U.S.C. § 2710(d)(3)(C), provides that a compact may include provisions relating to –

(i)    the application of the criminal and civil laws and regulations of the Indian tribe or the state that are directly related to, and necessary for, the licensing and regulation of such [Class III gaming] activity;

(ii)    the allocation of criminal and civil jurisdiction between the state and the Indian tribe necessary for the enforcement of such laws and regulations;

(iii)    the assessment by the state upon such [Class III gaming] activities in such amounts as are necessary to defray the costs of regulating such [Class III gaming] activities;

(iv)    taxation by the Indian tribe of such [Class III gaming] activities in amounts comparable to amounts assessed by the state for comparable activities;

(v)    remedies for breach of contract;

Complaint

(vi)   standards for the operation of such [Class III gaming] activities and maintenance of the gaming facility, including licensing; and

(vii)   any other subjects that are directly related to the operation of [Class III gaming] activities.

14.   IGRA further provides that except for assessments to which a tribe and the state may agree in order to defray a state's actual and reasonable costs of regulating the tribe's Class III Gaming Activities, IGRA shall not "be interpreted as conferring upon a State or any of its political subdivisions authority to impose any tax, fee, charge, or other assessment upon an Indian tribe or upon any other person or entity authorized by an Indian tribe to engage in a class III activity. No State may refuse to enter into the negotiations . . . based upon the lack of authority in such State, or its political subdivisions, to impose such a tax, fee, charge, or other assessment." 25 U.S.C. §2710(d)(4).

15.   IGRA does not authorize a state or any of its political subdivisions to impose a tax on a tribe via a Class III gaming compact, and instructs a court "to consider any demand by the State for direct taxation of the Indian tribe or of any Indian lands as evidence that the State has not negotiated in good faith." 25 U.S.C. §2710(d)(7)(B)(iii)(II).

Complaint

16.    Section 4 of the Redding 1999 Compact authorizes Redding to operate up to two Gaming Facilities, up to 2,000 Gaming Devices (i.e., slot machines), banked and percentage card games, and games and devices that State law authorizes to the California State Lottery.

17.    Section 5.1 of the Redding 1999 Compact obligates Redding to pay seven percent (7%) of the Net Win from 201 of its Gaming Devices into the Indian Gaming Special Distribution Fund ("SDF") that the California legislature created in the State treasury.

18.    Section 4.3.2.2(a) of the Redding 1999 Compact provides that in order to operate more Gaming Devices than the number of Gaming Devices that Redding operated on September 1, 1999, Redding must draw a license (one for each additional Gaming Device) from the State-administered Gaming Device license pool (Redding does not need Gaming Device licenses for the Gaming Devices that Redding operated on September 1, 1999.) For each license drawn, Redding must pay into the Indian Gaming Revenue Sharing Trust Fund ("RSTF") a non-refundable, one-time pre-payment fee of $1,250. For licenses in excess of the first 350 drawn, Redding must pay into the RSTF an annual license fee of between $900 and $4,350 for each Gaming Device license maintained. Redding has operated as many as 1,024 Gaming Devices, of which 625 were operated pursuant to Gaming Device licenses. Redding has paid more than $ 3,200,000 into the RSTF since the Redding 1999 Compact took effect.

Complaint

19.   On November 3, 2014, Redding formally requested that the State enter into negotiations for a new compact or an amended compact to replace the Redding 1999 Compact on or before the date that the Redding 1999 Compact expires.

20.   Formal negotiations between Redding and the State commenced on or about January of 2015, more than six years ago. At the outset of those negotiations, the two governments agreed that although discreet issues could be discussed and tentative agreement on language could be reached, there was no consummated agreement on any issue unless and until there was agreement on all issues. During the course of those negotiations, the Tribe and State exchanged several drafts, including language on many provisions that would be otherwise acceptable, albeit under duress, to Redding if there was otherwise agreement on all issues. Redding and the State never were able to agree upon language addressing the material provisions regarding mandatory agreements with local governments (including waiver of the Tribe's sovereign immunity and  binding arbitration),  and regarding organized labor for all or part of the Tribe's workforce. As no agreement was reached on those specific provisions, no agreement was or has been reached on all issues, and accordingly, no agreement was or has been reached on any issue.

21.   The last formal negotiating session between Redding and the State's negotiating team occurred on May 8, 2019. It was clear from that meeting that the State was unwilling to modify its proposed language regarding key provisions of concern to the

8                                                    Complaint

Tribe. Thereafter, Redding corresponded directly with Governor Newsom,  and copied the State's negotiation team, asking the State on August 14, 2019 to change its position on several material issues, with an emphasis on the State's insistence on mandatory local agreements. The State acknowledged receipt of the letter but, otherwise, Redding never received a response.

22.   On March 9, 2021, via email (and by certified mail received by the State on March 13, 2021), Redding corresponded with the State's negotiation team in an effort to bring the negotiations to conclusion, offering two options for a new gaming compact with the State. Option A, which the Tribe was willing to sign under duress, contained most of the State's proposed language even though the Tribe objected to such proposed language, but deleted the mandatory local agreement and organized labor provisions. Option B, on the other hand, included those provisions which the Tribe believed the State could require in a compact negotiated in good faith, but excluded those provisions which the Tribe believed the State could not require  in a compact negotiated in good faith.

23.   The March 9, 2021, also included the Tribe's oft-repeated offer to execute a short-term (12-18 months) extension of the 1999 Redding Compact to allow additional time to negotiate a comprehensive new or amended compact in a manner that would not otherwise jeopardize the ability of the Tribe to timely pursue its

Complaint

remedies under IGRA, as such short-term extensions are contemplated by 25 CFR § 293.5.

23.     The March 9, 2021 letter informed the State that Redding would file an attached draft complaint in substantially the same form as this Complaint within fourteen days unless there was traction in response to Options A or B or the option of a short-term extension pursuant to 25 CFR § 293.5. On March 23, 2021, the State responded, rejecting all three options.

24.     The negotiations between the State and Redding concluded without an agreement on the terms of a new compact to replace or amend the Redding 1999 Compact.

### MANDATORY LOCAL AGREEMENTS

25.     From the inception of negotiations between Redding and the State for a new or amended compact, the State has insisted upon Redding entering into enforceable written agreements with County and City governments (and in certain circumstances, separately with Caltrans), which provide for compensation by the Tribe to the County and City governments, prior to the commencement of any construction, renovation, expansion or modification of any "Gaming Facility."

26.     From the inception of negotiations between Redding and the State for a new or amended compact, the State has insisted upon Redding waiving its sovereign immunity, subjecting Redding to binding arbitration in the event it does not reach

Complaint

written agreements with the County and City governments, and preventing Redding from being able to commence any project unless written agreements with the County and City governments are in place.

27.    During the course of negotiations, the State proposed that it "step in the shoes" of the County and City governments, such that the written agreements would be with the State rather than the County and City governments, but clarified that in such event, the State would likely simply delegate its authority to the County and City governments. Such a distinction is no distinction at all.

28.    The State's requirement of mandatory local agreements would result in an incomplete compact, and accordingly, would result in the failure to conclude compact negotiations in good faith, because such requirement would leave unresolved, as of the date of execution of the compact, material terms and provisions that had yet to be agreed upon.

29.    The State's requirement of mandatory local agreements creates improper leverage for the County and City governments, whereby a County or City government could hold a project hostage unless the Tribe acquiesced.

30.    The State's requirement of mandatory local agreements creates an unfair playing field whereby County and City governments are able to extract fees from the Tribe over and above the actual and reasonable costs of services provided by a County or City, such that illegal taxation of tribal gaming revenue is likely to result.

Complaint

31.    The State's requirement of mandatory local agreements goes beyond the intrusion upon tribal self-governance intended by, and limited by, Congress in the passage of IGRA, which requires Redding to reach an agreement only with the State, and not also with political subdivisions of the State.

32.    The State's requirement of mandatory local agreements unduly interferes with the Tribe's relationships with County and City governments by tipping the scales in the context of otherwise cooperative arms-length negotiations among cooperating governments, defeating the express purposes of IGRA in promoting strong tribal self-governance.

33.    The State's requirement that Redding waive its sovereign immunity, and be bound by the decision of an appointed arbitrator in the event Redding is unable to reach written agreements with the County and City governments, deprives the Tribe of its ability to take a dispute to federal courts, including federal appellate courts, which forums provide jurists experienced and well-versed in federal Indian law. Demanding that the Tribe deprive itself of such remedies, and instead subject itself to the real risk of an improper or unjust arbitration award by a lone unqualified arbitrator, cannot be done in good faith.

34.    Redding, during the twenty years of gaming under the Redding 1999 Compact, routinely and in good faith reached voluntary agreements with the local City government for services provided to the Tribe's Indian lands. During the entirety of

Complaint

the negotiations between Redding and the State, the State never identified any specific deficiency in the Redding 1999 Compact, especially in section 10.8 thereof discussed in further detail in paragraphs 54 - 59 below, much less a deficiency which would warrant the new requirements of mandatory local agreements, waivers of the Tribe's sovereign immunity thereto, and binding arbitration.

35.    For the reasons set forth in paragraphs 25 - 34, the State's requirement of mandatory local agreements, where the Tribe must waive its sovereign immunity and subject itself to binding arbitration, constitutes failure to conclude compact negotiations in good faith.

## ILLEGAL TAXATION OF TRIBAL GAMING REVENUE

36.    Throughout Redding's negotiations for a new compact, the State insisted that Redding pay more into the SDF than is necessary to reimburse the State for its actual and reasonable costs that are directly related to regulation of Redding's Gaming Activities.

37.    By insisting upon the payment of fees that exceed what is necessary to defray the State's actual and reasonable costs of exercising its regulatory authority under a new compact, the State seeks to impose a tax, fee, charge or other assessment on Redding's Gaming Activities, and thus, the State has failed to negotiate in good faith.

38.    Throughout Redding's negotiations for a new compact, the State has insisted that, unless Redding agrees to operate fewer than 1,200 Gaming Devices, Redding

Complaint

must make payments into the RSTF of more than is needed to distribute up to $1.1 million per year to each federally-recognized California Indian tribe operating fewer than 350 Gaming Devices. Although Redding is willing and wanting to assist those California tribes that do not operate gaming facilities, the State should not and need not have a role in such inter-tribal arrangements, and the State has no authority under IGRA to create or continue such a role. Accordingly, the State is not negotiating in good faith by requiring that Redding make any further payments into the RSTF other than those agreed to in the Redding 1999 Compact, which payments expire on June 30, 2022.

39.     By insisting that, unless Redding agrees to operate less than 1,200 Gaming Devices, Redding must make payments into the RSTF, the State seeks to impose a tax, fee or assessment on Redding's Gaming Activities that is impermissible under 25 U.S.C. § 2710(d)(4), and thus, the State has failed to negotiate in good faith.

40.     Throughout Redding's negotiations for a new compact, the State has insisted that, unless Redding agrees to operate fewer than 1,200 machines, Redding must make payments into the State-created Tribal Nations Grant Fund ("TNGF"), from which a State-created administrative body, without input from Redding but using funds provided in part by Redding, would award grants on a competitive basis to tribes with small or no gaming operations, subject to various restrictions and a provision allowing for the transfer of any surplus in the RSTF to the TNGF.

Complaint

41.     By insisting that, unless Redding agrees to operate less than 1,200 Gaming Devices, Redding must pay into the TNGF, the State seeks to impose a tax, fee or assessment on Redding's Gaming Activities that is impermissible under 25 U.S.C. § 2710(d)(4), and thus, the State has failed to negotiate in good faith.

42.     Throughout Redding's negotiations for a new compact, the State has insisted that Redding reach mandatory local agreements, more specifically described in paragraphs 25 – 34 above, which agreements would improperly enable the County and City governments to impose a tax, fee or assessment on Redding's Gaming Activities that is impermissible under 25 U.S.C. § 2710(d)(4), and thus, the State has failed to negotiate in good faith.

43.     There are circumstances in which a state may extract fees from tribal gaming revenues beyond amounts required to defray the reasonable and actual costs of the state's performance of its obligations under a compact, but the circumstances require that a tribe seek, and the state provide, meaningful concessions beyond the state's obligation to negotiate in good faith, which concessions have a value to a tribe commensurate to the fee or tax being extracted. *Rincon Band v. Schwarzenegger,* 602 F.3d 1019 (9th Cir. 2010). But those circumstances are not present here. Redding has not sought any such meaningful concessions by the State. The State has not offered any such meaningful concessions to the Tribe. Hence, the fees or taxes at issue and described in paragraphs 36 – 42 above cannot be valid under the circumstances here.

Complaint

**ORGANIZED LABOR**

44.     From the inception of negotiations between Redding and the State for a new or amended compact, the State has insisted upon Redding's enactment and maintenance in force of a certain Tribal Labor Relations Ordinance ("TLRO"), to be appended to any new or amended compact.

45.     The State's required TLRO, which restricts the Tribe's rights far more than the TLRO required of Redding's 1999 Compact, would deprive Redding of certain rights it has as an "employer" subject to the jurisdiction of the National Labor Relations Board ("NLRB"), expand the rights of labor organizations beyond those conferred by the National Labor Relations Act, 29 U.S.C. §§ 151 et. seq. ("NLRA"), deprive individual employees of the Tribe's gaming operation of rights secured by the NLRA, and subject Redding to a labor-management relations regime unlike that applicable to any other California employer subject to the NLRB's jurisdiction, including State-licensed gambling establishments.

46.     Compliance with the State's proposed TLRO would subject the Tribe to potential violations of the NLRA. Conversely, compliance with the NLRA would subject the Tribe to potential violations of the State's proposed TLRO and compact. Such a catch-22 position is untenable.

47.     One of the concessions that the State demanded as a condition to the State's entry into the Redding 1999 Compact was that, on or before October 13, 1999,

Complaint

Redding had to provide the State with an "agreement or other procedure acceptable to the State for addressing organizational and representational rights of Class III Gaming Employees and other employees associated with the Tribe's Class III gaming enterprise, such as food and beverage, housekeeping, cleaning, bell and door services, and laundry employees at the Gaming Facility or any related facility, the only significant purpose of which is to facilitate patronage at the Gaming Facility."

48.    The only "agreement or other procedure acceptable to the State" under § 10.7 of the Redding 1999 Compact was a model TLRO appended to the Redding 1999 Compact.

49.    In 1999, as consideration for Redding's agreement to adopt the model TLRO, the State made a meaningful concession of unique value to Redding; namely,  an amendment to Article IV, § 19 of the California Constitution that authorized the Governor to negotiate, and the Legislature to ratify, tribal-state compacts authorizing California Indian tribes, to the exclusion of all other persons and entities, to operate on their Indian lands slot machines, banked card games, and games and devices permitted by State law to the California Lottery.

50.    When the Redding 1999 Compact took effect in May of 2000, the NLRB had not asserted jurisdiction over tribal government gaming operations.

51.    The NLRB now asserts jurisdiction over tribal government gaming operations pursuant to the NLRA.  The NLRB's assertion of such jurisdiction has been upheld

by the Ninth Circuit Court of Appeals, *Casino Pauma Band v. National Labor Relations Board*, 888 F.3d 1066 (9th Cir. 2018), as well as by other circuits in other cases, clarifying that the NLRA, and not the State's mandated TLRO, governs labor relations at gaming facilities on Indian lands.

52.     The State's demand that Redding enact its proposed TLRO is not necessary for and directly related to the regulation and licensing of Redding's Gaming Activities, does not establish a standard for the operation of Redding's Gaming Activities or the maintenance of Redding's gaming facilities, is not otherwise directly related to the operation of Redding's Gaming Activities, and thus, is not a proper subject of negotiation under IGRA.

53.     The State's insistence on including such a TLRO provision in a new or amended compact, and the State's refusal or failure to justify the provision subsequent to definitive federal court decisions holding that the NLRA applies, constitute a failure by the State to negotiate in good faith.

## ENVIRONMENTAL REGULATION

54.     In enacting IGRA, Congress did not intend that the compacting process be used by States to extend their jurisdiction into matters such as taxation, reservation-based water rights, reservation land use, or environmental regulation.

55.     Section 10.8.1 of the Redding 1999 Compact requires Redding to adopt an ordinance providing for the preparation, circulation and consideration by the Tribe of

environmental impact reports concerning potential off-reservation environmental impacts of any and all projects to be commenced on or after the effective date of the Redding 1999 Compact. In fashioning the environmental protection ordinance, the Redding 1999 Compact requires the Tribe to make a good faith effort to incorporate the policies and purposes of the National Environmental Policy Act ("NEPA") and the California Environmental Quality Act ("CEQA"), consistent with the Tribe's governmental interests.

56.     In return for Redding's agreement to include the above-described language and other provisions in Section 10.8 of the Redding 1999 Compact, the State offered Redding a meaningful concession of unique value on an issue about which the State was not otherwise obligated to negotiate in good faith; namely, an amendment to the California Constitution allowing the Governor to negotiate, and the Legislature to ratify, tribal-State compacts authorizing federally-recognized California Indian tribes, exclusive of all other persons and entities, to operate on their Indian lands gaming machines, banked card games, and games and devices authorized to the California State Lottery.

57.     Since the Redding 1999 Compact took effect over twenty (20) years ago, the State has never alleged that Redding has not fully complied with any portion of § 10.8 of the Redding 1999 Compact, that § 10.8 is inadequate to protect the off-reservation environment from significant adverse impacts resulting from projects undertaken by

Complaint

Redding, or that renegotiation of § 10.8 is necessary to ensure adequate mitigation by Redding of significant adverse off-reservation impacts of projects related to Redding's Gaming Activities.

58.     Throughout Redding's negotiations for a new compact, and without offering any Redding-specific justification or meaningful concession of unique value to Redding on an issue about which the State is not otherwise able to negotiate in good faith, the State insisted that any new or amended compact require Redding to, *inter alia*:

(a) perform a much more detailed and comprehensive CEQA-based review of proposed "Projects" than is required by § 10.8 of the Redding 1999 Compact, even if a Project is not directly related to and necessary for the regulation and licensing of Redding's Gaming Activities, or otherwise directly related to the operation of Redding's Gaming Activities;

(b) provide wider-ranging notice to the public and State and local government agencies of the environmental review of proposed "Projects" than is required by § 10.8 of the Redding 1999 Compact, without identifying any deficiency in the notice required by the Redding 1999 Compact;

(c) prior to commencing a Project, offer to negotiate, enter into, and if necessary, arbitrate with surrounding local governments and the California Department of Transportation (if a State highway would be impacted) binding and

Complaint

enforceable agreements to mitigate a proposed Project's off-reservation environmental and other impacts (discussed in greater detail in paragraphs 25 - 34 above); and

      (d) implement the mitigation measures identified in the final environmental document for the "Project."

59.    Requiring Redding to enact a new environmental protection ordinance that incorporates the provisions set forth in subparagraphs (a) – (d) of Paragraph 58 above is not directly related to and necessary for the regulation and licensing of Redding's Gaming Activities, does not establish standards for the operation of Redding's Gaming Activities or maintenance of Redding's gaming facility, is not otherwise directly related to the operation of Redding's Gaming Activities, and thus, is not a proper subject of negotiation under IGRA. The State's insistence on including such provisions in a new compact constitutes a failure by the State to negotiate in good faith.

**TERM**

60.    Since the inception of negotiations, Redding has requested that the term provision be revised to minimize or eliminate the possibility that a compact will expire before the parties are able to reach a new or amended agreement. To this end, the Tribe provided several examples of provisions included in compacts in other states, affirmatively approved by the Department of the Interior, providing that if the parties

Complaint

are in negotiations or litigation at the time the compact in effect expires, it remains in effect until a new compact is put into place or the tribe's remedies under IGRA have been exhausted. The State has refused to consider any of the Tribe's proposals and has failed to provide any rational explanation for rejecting those proposals.

61.     Redding does not contend or dispute that the State can require in good faith a term of years for the compact, but to do so in a manner that creates substantial risks of the compact expiring without a new or amended compact, or procedures issued by the Department of the Interior, in place, constitutes failure to conclude negotiations in good faith.

### ADDITIONAL SUBJECTS NOT DIRECTLY RELATED TO THE REGULATION OF CLASS III GAMING

62.     Throughout the negotiations, the State has insisted on including, in addition to those provisions alleged above, other material provisions that are not directly related to or necessary for the licensing and regulation of Gaming Activities, do not establish standards for the operation of Gaming Activities or maintenance of a facility in which Gaming Activities are conducted, or are not otherwise directly related to the operation of Gaming Activities, and thus, are not proper subjects of negotiation under IGRA, including *inter alia*:

a.      A definition of "Gaming Facility" that includes structures and other improvements in which no Gaming Activities occur;

Complaint

b.      A definition of "Gaming Operation" that includes activities or functions that are not, themselves, Gaming Activities, or are not directly related to or necessary for the regulation and licensing of Gaming Activities or the operation of Gaming Activities and maintenance of gaming facilities;

c.      A definition of "Gaming Employee" that includes personnel such as food and beverage cooks and servers, hotel housekeeping employees, parking attendants and other employees whose duties would not include direct or even indirect involvement in the actual operation or regulation of Gaming Activities. By defining "Gaming Employees" so broadly, the State would bring within the scope of the compact personnel not directly related to and necessary for the regulation and licensing of Redding's Gaming Activities, or not otherwise directly related to the operation of Gaming Activities.

d.      Despite Congress having expressly excluded tribes such as Redding from the definition of "employer" under 42 U.S.C. §§ 2000e(b) ("Title VII") and 12111(5)(b) ("ADA"), a provision requiring Redding to enact an ordinance that prohibits workplace discrimination, harassment and retaliation; that creates remedies in money damages for such claims; and that requires Redding to carry at least $3 million in employment practices insurance;

e.      A provision prohibiting Redding's gaming operation from cashing, except for Redding's tribal members, any check drawn against a federal, state, county,

Complaint

or city fund, including but not limited to, checks for Social Security payments, unemployment insurance payments, disability payments, or public assistance payments;

f.      A provision requiring compliance with the State's minimum wage law and regulations for all gaming operation employees, including for employees not directly involved in the operation or regulation of Gaming Activities or the maintenance of gaming facilities;

g.      A provision requiring Redding to carry $10 million dollars in liability insurance, and to waive its sovereign immunity to, and create remedies in money damages for, claims for personal injury, bodily injury or property damage sustained on the Tribe's Indian lands while not participating in gaming;

h.      With three exceptions (Redding tribal members living on the Redding Indian lands, tribal members living on other tribes' reservations, and tribal members who request to opt out of tax withholding), a provision requiring that Redding withhold state income taxes from the wages of all gaming operation and gaming facility employees and remit same to the State, and file with the California Franchise Tax Board a copy of any information tax return filed with the Secretary of the Treasury, except for returns pertaining to Redding tribal members living on Redding's Indian lands;

Complaint

i.      A provision requiring Redding to enact an ordinance requiring Redding to honor California state court spousal and child support orders directed at all gaming operation employees;

j.      A provision requiring Redding to carry $3 million dollars in employment practices liability insurance, and enact a tribal ordinance that not only prohibits workplace discrimination, harassment and retaliation, but also creates remedies in money damages for all gaming operation employees, including employees not directly involved in the operation of Gaming Activities or maintenance of a gaming facility.

(1)     As a federally-recognized Indian tribe, Redding is expressly excluded from the definition of "employer" under Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act, and federal courts have held that federally-recognized Indian tribes are not subject to private lawsuits for money damages under various other federal statutes dealing with workplace discrimination.

(2)      Notwithstanding federal statutes that exclude Redding from the definition of "employer," and federal court decisions holding that tribes are not subject to private suits for money damages under those statutes, the State insisted on including in a new compact with Redding the requirement that Redding carry $3 million in

25                              Complaint

employment practices liability insurance.

63.   The State insists on including each and all of the matters enumerated in subparagraphs (a) through (j) in Paragraph 62 above. None of such matters are either directly related to or necessary for the regulation and licensing of Gaming Activities, or establish a standard for operation of Gaming Activities or maintenance of Redding's gaming facilities, or are otherwise directly related to the operation of Gaming Activities. Accordingly, each and all such matters are not proper subjects of negotiation under IGRA. Therefore, the State's insistence on including such provisions constitutes a failure by the State to negotiate in good faith.

64.   Since 2018, Redding has repeatedly proposed that the State agree to extend the term of the Redding 1999 Compact for a short period to enable the compact negotiations to continue in a manner that avoids the termination of the Redding 1999 Compact without a new or amended compact in place. Such extensions are expressly allowed pursuant to 25 C.F.R. § 293.5 and are routinely used by several other states to promote negotiations and avoid litigation. Without justification or reasoned explanation, the State has rejected those proposals. The State's refusal to agree to such a short-term extension unreasonably risks a situation whereby the Redding 1999 Compact expires prior to a new or amended compact, or procedures duly promulgated by the Department of the Interior, being in place. Such refusal of the Tribe's

Complaint

reasonable requests (particularly in the context of the coronavirus pandemic) constitutes a failure by the State to negotiate in good faith.

## CLAIM FOR RELIEF

### State's Failure to Conclude Compact Negotiations in Good Faith

65.    Redding hereby re-alleges each of the facts alleged in Paragraphs 1–64 above, and by this reference incorporates each such allegation herein as if set forth in full.

66.    Separately, collectively, in isolation, and in the aggregate, these allegations establish a *prima facie* case that the State has failed to conclude compact negotiations in good faith. Accordingly, the burden is on the State to prove to this Court that it did conclude compact negotiations with Redding in good faith.

67.    The State is unable to meet that burden.

68.    Accordingly, per the direction provided in IGRA, Redding is entitled to an Order of this Court finding that the State has failed to conclude compact negotiations in good faith, and is entitled to the remedial provisions set forth in the Prayer for Relief, below.

Complaint

# PRAYER FOR RELIEF

**WHEREFORE**, Redding prays as follows:

1.  that the Court enter judgment finding that the State of California has failed to conclude tribal/state compact negotiations in good faith as required by IGRA.

2.  that the Court order the parties to enter into further compact negotiations for a period of sixty (60) days from the entry of the Court's judgment, and if the parties are unable to agree to the terms of a new compact within that time, to jointly file with the Court a joint report to that effect;

3.  that if the parties have not agreed on the terms of a new compact within the sixty (60) days the Court allows for further negotiations, the Court will appoint a mediator to whom the Tribe and the State each will submit their respective last, best compact, and the mediator shall select from the two proposed compact the one that best comports with the terms of IGRA and any other applicable federal law and with the Court's findings and order, and submit that proposed compact to the State;

4.  that if the State consents to the proposed compact selected by the mediator, the proposed compact shall be treated as a tribal-state compact entered into under IGRA;

5.  that if the State does not consent to the proposed compact submitted by the mediator, pursuant to 25 U.S.C. § 2710(d)(7)(B)(iii), Redding shall be entitled

Complaint

to obtain from the Secretary of the Interior procedures under which Redding may continue to conduct Gaming Activities on its Indian lands;

6. that in the event that a new compact with the State, or Class III gaming procedures prescribed by the Secretary of the Interior, have not taken effect prior to June 30, 2022, Redding may continue operating Gaming Activities consistent with the terms of the Redding 1999 Compact until the effective date of either a new compact or procedures prescribed by the Secretary of the Interior; and

7. that the Court grant such other relief as it deems appropriate in the circumstances.

Dated:  March 29, 2021

Respectfully submitted,     By:

/s/ *Michael Hollowell*
Michael Hollowell, SBN 314530
Redding Rancheria
2000 Redding Rancheria Road
Redding, California 96001-5528
Email: Michael.Hollowell@reddingrancheria-nsn.gov
Telephone: (530) 242-4557
Fax: (530) 243-8768

Scott Crowell *Pro Hac Vice pending*
Crowell Law Office – Tribal Advocacy Group PLLC
1487 W. State Route 89A, Ste. 8

Complaint

Sedona, Arizona 86336
scottcrowell@clotag.net
Telephone: (425) 802-5369
Fax: (509) 235-5017

*Attorneys for Plaintiff*

30

Complaint